IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DERRELL JOHNSON<br>ALAN KANE | CRIMINAL ACTION<br><br>NO. 24-14 |

MEMORANDUM RE: DEFENDANTS' POST-TRIAL MOTIONS

**Baylson, J.**                                                                                           **December 19, 2024**

Following a jury trial in September 2024, Defendant Derrell Johnson was found guilty of making false statements to the FBI (Counts 5 and 6) and Defendant Alan Kane was found guilty of bankruptcy fraud (Count 1), filing false bankruptcy claims (Count 2), making false statements to the FBI (Count 3), and participating in a scheme involving bankruptcy fraud (Count 7). Johnson and Kane now each move this Court under Federal Rules of Criminal Procedure 29 and 33 for judgments of acquittal and new trials. For the reasons stated below, these Motions are **DENIED**.

I.    FACTUAL AND PROCEDURAL HISTORY

   A.  The Indictment

On January 11, 2024, a federal grand jury in the Eastern District of Pennsylvania returned a 12-count indictment against Jonathan Barger, Alan Kane, and Derrell Johnson. ECF 1. The indictment accused the Defendants of being involved in multiple fraudulent schemes, including stealing a house from the estate of a deceased person and misuse of the bankruptcy system. Id. The charges included, in relevant part as to Johnson and Kane, per ECF 1:[1]

- **Count 1:** Bankruptcy fraud by Kane in violation of 18 U.S.C. §§ 157 & 2.

- **Count 2:** Filing false bankruptcy claims by Kane in violation of 18 U.S.C. § 152(4).

---

[1] The other Counts in the indictment are irrelevant to this trial.

1

- **Count 3:** Making false statements to FBI agents about matters connected to Counts 1 and 2 by Kane in violation of 18 U.S.C. § 1001.

- **Counts 5 and 6:** Making false statements to FBI agents by Johnson about his involvement in the fraudulent schemes in violation of 18 U.S.C. § 1001.

- **Count 7:** Participation in a scheme involving bankruptcy fraud by Kane in violation of 18 U.S.C. §§ 157 & 2.

**B. The Fraud Schemes**

Following the death of William Kraftsow, in 2016, Joseph Ruggiero—assisted by Barger, Kane, Johnson, and two other individuals identified as "Person A" and "Person B"— fraudulently acquired title to a property located at 2324 Loney Street in Philadelphia, which Kraftsow had owned (the "Loney Street Property"). ECF 1 at 2.

On May 23, 2017, Person B emailed drafts of fraudulent deeds to Johnson which purported to show that Kraftsow's mother had transferred the Loney Street Property to Ruggiero. Id. ¶ 21. The deeds were backdated to 2009 and 2012—dates after Kraftsow's mother's 1997 death. Id. Person A recorded an altered version of one deeds, which purported to transfer title from Kraftsow's mother to the fictitious "Antonio Rossi." Id. ¶ 22. A subsequent fraudulent deed was recorded to transfer the property from "Rossi" to Ruggiero.

Ruggiero applied for tax relief for the Loney Street Property under the Philadelphia Owner-Occupied Payment Agreement ("OOPA") program. Id. ¶ 29. In support of his OOPA application, Ruggiero provided documents including an gas bill that appeared to be addressed to him at the Loney Street Property, but was an altered version of a gas bill that had been sent to Johnson at another address. Id. ¶ 31. On June 30, 2017, the City of Philadelphia approved the OOPA application, and the same day, Barger signed a $5,000 check payable to Johnson. Id. ¶¶ 33, 34. Later, during the FBI's investigation, Johnson falsely told FBI agents that he did not recognize the

fraudulent deeds or checks tied to the schemes and stated that the checks he cashed were intended for a third party and not for himself. Id. at p. 20–21.

The Kraftsow heirs discovered the fraudulent deeds and filed a lawsuit to recover title to the Loney Street Property. Id. ¶ 40. Ruggiero, Barger, and Kane (who represented Ruggerio in the litigation) made false representations during the course of the litigation. Id. ¶¶ 39–49. Kane, on behalf of Ruggiero, filed a fraudulent bankruptcy petition, which stayed the lawsuit. Id. ¶¶ 50, 62–74. Barger and Kane then used the bankruptcy proceedings to further the fraud. Id. ¶¶ 69–74. Later, during the FBI's investigation, Kane denied involvement in the fraudulent schemes and made false statements regarding fraudulent documents that he filed in relation to the bankruptcy proceedings. Id. at p. 17.

### C. Procedural History

Barger, Johnson, and Kane were arraigned and pleaded not guilty. On May 23, 2024, Barger charged his plea to guilty. ECFs 78, 80. On September 16, 2024, trial against Johnson and Kane commenced before a jury. ECF 121. The Government rested its case on September 19, 2024. Kane did not put on a defense. Johnson called one expert witness and two character witnesses as part of his defense. On September 20, 2024, the jury returned a unanimous guilty verdict on all counts against each Defendant. ECF 135.

On October 4, 2024, Johnson filed a Motion for Acquittal pursuant to Rule 29 and a Motion for a New Trial pursuant to Rule 33. ECF 142. The Government filed its Response on November 27, 2024. ECF 155. On November 27, 2024, Kane filed a Motion for Acquittal pursuant to Rule 29 and a Motion for a New Trial pursuant to Rule 33. ECF 154. The Government filed its Response on December 11, 2024 (ECF 159).

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 29

Under Federal Rule of Criminal Procedure 29, a court must acquit a defendant "of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When reviewing a jury verdict for sufficiency of the evidence, a court "must consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt.'" United States v. Gatlin, 613 F.3d 374, 380 (3d Cir. 2010) (quoting United States v. Brown, 3 F.3d 673, 680 (3d Cir. 1993)).  A court may not weigh the evidence or credibility of witnesses.  United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998).  A jury's verdict must stand "unless no reasonable juror could accept the evidence as sufficient to support the defendant's guilt beyond a reasonable doubt."  United States v. Fattah, 914 F.3d 112, 183 (3d Cir. 2019).

### B.  Federal Rule of Criminal Procedure 33

Under Federal Rule of Criminal Procedure 33, a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  Rule 33 permits a court determining whether a new trial is warranted on the ground that the jury's verdict is contrary to the weight of the evidence to "exercise[s] its own judgment in assessing the Government's case."  United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002).  However, despite the fact that "the standard of review for a motion for a new trial is broader than that for acquittal, motions for new trials are disfavored and are only granted with great caution and at the discretion of the trial court."  United States v. Crim, 561 F. Supp. 2d 530, 533 (E.D. Pa. 2008) (Brody, J.) (citation omitted).  A new trial is to be granted "sparingly and only in exceptional cases."  Gov't of V.I. v. Derricks, 810 F.2d 50, 55 (3d Cir. 1987) (citations omitted), and is warranted only if "there is a

serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." Johnson, 302 F.3d at 150 (citations and internal quotation marks omitted).

### III. JOHNSON'S POST-TRIAL MOTIONS

Johnson filed post-trial motions under Federal Rules of Criminal Procedure 29 and 33. For the reasons stated below, Johnson's motions are **DENIED**.

#### A. Rule 29 Motion

##### 1. Parties' Contentions

Johnson argues that the Government failed to produce evidence that he acted willfully in violation of 18 U.S.C. § 1001 and that his statements were material. ECF 142 at 3. The Government argues that it presented the jury "with substantial evidence proving that Johnson knew, at least in a general sense, lying to the FBI or obstructing a criminal investigation was unlawful," and "evidence that Johnson repeated his lies to the FBI during a second interview." ECF 155 at 16. The Government argues that a rational jury could reasonably have concluded that "[Johnson] knew, at least in a general sense, that he had acted unlawfully when he lied to the FBI and he was trying to cover up that crime." ECF 155 at 17.

##### 2. Analysis

Under Title 18, United States Code, Section 1001(a), "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry" shall be guilty of a felony. 18 U.S.C. § 1001. The Third Circuit has noted that "when 'willfully' is used in a criminal statute, and particularly where the term is used in conjunction with 'knowingly,' as it is in § 1001(a), it usually requires

the government to prove that the defendant acted not merely voluntarily, but with a bad purpose, that is, with knowledge that his conduct was, in some general sense, 'unlawful.'" United States v. Starnes, 583 F.3d 196, 210 (3d Cir. 2009) (quoting Bryan v. United States, 524 U.S. 184, 192–93 & n.13 (1998)) (internal quotation marks omitted). Considering the evidence in the light most favorable to the Government, Gatlin, 613 F.3d at 380, this Court cannot conclude that "no reasonable juror could accept the evidence as sufficient to support [Johnson]'s guilt beyond a reasonable doubt." Fattah, 914 F.3d at 183.

The jury was presented with substantial evidence that could convince a rational juror beyond a reasonable doubt that Johnson knew that lying to the FBI was unlawful. Barger testified that he did not tell Johnson that the $5,000 check was for Juan Gonzalez nor direct him to cash the check and give the money to Juan Gonzalez. 9/18/24 Day 3 Tr. Trans. 211:4–8, ECF 151. Gonzalez testified that he did not get $5,000 from Johnson. 9/17/24 Day 2 Tr. Trans. 183:3–12, ECF 150. As a preliminary matter, Johnson's brief completely ignores Barger's testimony—which must be considered in the light most favorable to the Government. Barger's testimony provides sufficient evidence that the jury relied on to find Johnson guilty.

The jury also heard testimony from FBI Special Agent Joseph O'Connor, who interviewed Johnson. Agent O'Connor testified that the fraudulent Loney Street deed was sent to an email address which had Johnson's phone number registered as the recovery phone number. 9/17/24 Day 2 Tr. Trans. 105:8–108:17, ECF 150. Moreover, the jury heard testimony that Johnson repeated his lies to the FBI during a second interview years after his initial FBI interview. Id. 131:25–134:87. While Johnson's defense was that he was suffering from Mild Cognitive Impairment ("MCI"), causing him to make false statements, Johnson's expert Dr. Christopher

6

Royer also testified that while Johnson scored low on tests related to memory, he performed well on other cognitive tests.  9/19/24 Day 4 Tr. Trans. 222:2–225:3, ECF 144.

This evidence, viewed in the light most favorable to the government and in the context of the totality of the evidence in the record, "supports a reasonable inference that" Johnson "was aware that" generally, lying to the FBI or obstructing a criminal investigation was unlawful. Starnes, 583 F.3d at 213; see United States v. Iglesias, 535 F.3d 150, 156 (3d Cir. 2008) ("The government may defeat a sufficiency-of-the-evidence challenge on circumstantial evidence alone." (citing United States v. Bobb, 471 F.3d 491, 494 (3d Cir. 2006)).  Based on this evidence, and giving appropriate weight to Barger's testimony, a rational jury could have concluded beyond a reasonable doubt that Johnson made these false statements to the FBI knowingly and willfully.

Finally, there was sufficient evidence to support a finding of materiality.  Courts have recognized that "a frequent aim of false statements made to federal investigators is to cast suspicion away from the declarant." United States v. Moyer, 674 F.3d 192, 214 (3d Cir. 2012) (quoting United States v. Lupton, 620 F.3d 790, 806 (7th Cir. 2010)) (internal quotation marks omitted).  A statement "aimed at misdirecting agents and their investigation . . . satisfy[ies] the materiality requirement of 18 U.S.C. § 1001." Moyer, 674 F.3d at 214 (quoting Lupton, 620 F.3d 806–07 (internal quotation marks omitted).  The Government, though not required to show actual reliance on Johnson's statements, was required to prove that his statements had a "natural tendency to influence" or were "capable of influencing" the FBI. United States v. Gaudin, 515 U.S. 506, 509 (1995) (internal quotation marks and citation omitted).  Johnson's statements to the FBI that he did not recognize the fraudulent deeds and that the checks he cashed were intended for Gonzalez, "if taken as true . . . . [and] believed and acted upon," could have influenced the FBI's investigation.

Moyer, 674 F.3d at 214–15.  A reasonable jury could have found the evidence sufficient to establish materiality.

Because the evidence here is sufficient to sustain a conviction, the Court denies Johnson's Rule 29 Motion.

### B. Rule 33 Motion

#### 1. **The Court's Choice To Not Rule On The Belton Motion In Limine Does Not Warrant A New Trial Because There Is No Miscarriage Of Justice**

##### i. Parties' Contentions

Johnson argues that the Court erred by declining to rule on its motion in limine to exclude out-of-court and in-court identifications of Johnson.  ECF 142 at 3.  Johnson alleges that an individual named Nathan Belton made statements that contained exculpatory evidence in an interview—"that a woman he knew as 'Chyna' prepared the Loney Street deeds, and that he—Belton—recorded them at her request"—but that because the prosecutor represented to the Court that the Belton motion in limine could be delayed because Belton would not be called until later in the trial, the Court delayed the motion.  Id. at 4, 5.  Johnson argues that the Court's eventual decision not to rule on the motion in limine precluded Johnson from offering exculpatory evidence since the Court precluded a ruling on the Government's proposed cross-examination of Belton. Id. at 6.  The Government's response is twofold.  First, the Government argues that Johnson's motion in limine—which sought to limit the scope of the government's direct examination of Belton—was rendered moot by its decision to not call Belton as a witness.  ECF 155 at 19.  Second, Johnson's counsel "never actually asked the Court to limit the scope of the government's potential []examination of Belton," and thus Johnson's counsel's made a choice to not call Belton.  Id.

### ii. Analysis

When it was time for Johnson's case-in-chief, the Court asked counsel, Ms. Pantellas Lowe, Esq. to call witnesses. Ms. Pantellas Lowe raised an issue about Nathan Belton as a witness:

> MS. PANTELLAS LOWE: Well, Your Honor, it was a government witness . . . that they decided not to call.
>
> THE COURT: Okay.
>
> MS. PANTELLAS LOWE: I had him under subpoena and I'm calling him.
>
> THE COURT: And?
>
> MS. PANTELLAS LOWE: Well, we had a pending motion in limine regarding identification that this witness made of my client.
>
> . . .
>
> THE COURT: Okay. Well, you want to call him, right?
>
> MS. PANTELLAS LOWE: I do want to call him.
>
> . . .
>
> THE COURT: -- [to the Prosecution] do you object?
>
> MR. DUBNOFF: No, I don't. I -- the question is whether, on cross-exam -- well, there's two questions now: One is whether he can testify on direct – I'm sorry, I don't mean to cut off your motion in limine. . . . One is with regard to, during my cross-examination, if I can ask hm whether he knows the defendant -- . . . . either defendant because he would say he recognizes her client. And the second thing is whether, during his direct testimony, she can ask him questions about statements he made to the Government in prior interviews, which we contend are all hearsay, that none of that can come in.
>
> THE COURT: Well, it's not hearsay. But I don't know why it's relevant . . . what he said to the Government.
>
> . . .
>
> MS. PANTELLAS LOWE: I'm going to ask him who prepared them because he had told the Government that a woman named Ch[y]na prepared the deeds. Okay? . . . -- and that -- and -- but I want to -- I want to make a record on this witness, Your Honor, because, number one, the witness' statements to the Government, in my opinion, contain <u>Brady</u> evidence. Okay?

      THE COURT: Okay.

      MS. PANTELLAS LOWE: They were not --

      THE COURT: I'm not going to hear this now. We're going to bring the jury in and you call [Belton] -- where is he?

9/19/24 Day 4 Tr. Trans. 197:12–202:24, ECF 144. Johnson argues, based on this exchange, that the Court declined to rule on Johnson's motion in limine seeking the exclusion of all testimony by Belton, ECF 99 at 17, and thus precluded Johnson from offering exculpatory evidence.

But this Court did not prevent Ms. Panteallas Lowe "from calling Nathan Belton to the stand" or questioning Belton about his statement that a woman named Chyna prepared the deeds. ECF 142 at 6. Rather, Ms. Panteallas Lowe could have called Belton, but chose not to. Ms. Panteallas Lowe also did not ask this Court at trial to limit Belton's testimony on cross examination to exclude identification.[2]

---

[2] The standard for admitting evidence of identifications is "that of fairness as required by the Due Process Clause of the Fourteenth Amendment." Manson v. Brathwaite, 432 U.S. 98, 113 (1977). Even if Ms. Panteallas Lowe requested that the Court rule on whether the Government could cross-examine Belton about his identification of Johnson—which she did not—there would be no basis for concluding that the identification was unconstitutional. Johnson's Post-Trial Motion does not cite any case which stands for the proposition that that the ordinary use of photographs by police or federal investigators in reviewing evidence for possible use as a future criminal trial (or even at a grand jury presentation) violates the Constitution.

Johnson's Motion in Limine, ECF 99, argued (1) the single-photo identification procedure used for Belton was per se unduly suggestive and (2) that Belton's identification of Johnson should be excluded based on prosecutorial misconduct. ECF 99 at 15–16. But single photo arrays are not per se unduly suggestive, Burgos-Cintron v. Nyekan, 2011 WL 4361601, at *7–8 (D.N.J. Sept. 19, 2011), aff'd, 510 F. App'x 157 (3d Cir. 2013) (non-precedential), nor did Belton's identification of Johnson signify a substantial risk of misidentification under Neil v. Biggers, 409 U.S. 188, 199–200 (1972). Johnson cites no Third Circuit or Supreme Court case cited in support of any argument that the ordinary and day-to-day use of photographs by police or federal investigators in reviewing evidence for possible use as a future criminal trial (or even at a grand jury presentation) violates the constitutional rights of a future defendant. What's more, the conduct detailed in Johnson's Motion in Limine does not amount to prosecutorial misconduct which would justify excluding Belton's identification of Johnson.

The Court carefully evaluated the Government's proposed witness list in advance of the trial to eliminate any prejudice, and decided to order the Government to have Barger testify as the

10

This Court, "exercise[ing] its own judgment in assessing the Government's case," rejects Defendant's argument that "there is a serious danger that a miscarriage of justice has occurred" because it did not rule on the Motion in Limine before Ms. Panteallas Lowe began her case-in-chief. Johnson, 302 F.3d at 150 (citations and internal quotation marks omitted). Particularly, the Government's testimony from Agent O'Connor that the fraudulent Loney Street deed was sent to an email address, which was registered to Johnson's phone number, provides sufficient evidence that Johnson was involved in the fraudulent schemes. 9/17/24 Day 2 Tr. Trans. 105:8–108:17, ECF 150. Based on the evidence, this Court does not believe there is a serious danger that an innocent person was convicted. Johnson, 302 F.3d at 150.

### 2. The Court's Jury Instructions And Jury Verdict Form Do Not Warrant A New Trial Because There Is No Miscarriage Of Justice

#### i. Parties' Contentions

Johnson's counsel "requested that the jury be instructed that they must be unanimous regarding the two false statements contained in Count 5" and that the verdict form be amended to include the two specific false statements contained in Count 5, and argues that the Court's failure to do so warrants a new trial.[3] ECF 142 at 7. The Government responds that the jury instructions and verdict form were appropriate because Johnson was accused of lying in a single FBI interview and that the Court's instructions properly mitigated any risk of jury confusion. ECF 155 at 23–24.

---

first witness solely to identify Kane and Johnson. Once this was done, the jury could not have been prejudiced by the evidence that the agents had shown Belton the photograph of Johnson.

[3] Johnson inaccurately asserts that the Court "announced to the parties that it was just going to give the government's proposed instructions" and did not hold a jury instruction conference. ECF 142 at 7. The Court held a charge conference, see 9/20/24 Day 5 Tr. Trans. 18:16–25:17, ECF 152, and prepared jury instructions that considered each party's filings.

### ii. Analysis

A specific unanimity instruction is required only where "the complexity of the case, or other factors, creates the potential that the jury will be confused." United States v. Beros, 833 F.2d 455, 460 (3d Cir. 1987); United States v. Dwyer, 493 F. App'x 313, 318 (3d Cir. 2012) (non-precedential) ("A specific unanimity instruction . . . is necessary only when 'the jury is likely to be confused as to whether it is required to be unanimous on an essential element.'" (quoting United States v. Cusumano, 943 F.2d 305, 312 (3d Cir. 1991))).

Here, no specific unanimity instruction was required; the Court's general unanimity instruction sufficed. See 9/20/24 Day 5 126:9–11, ECF 152 ("Your verdict has to be unanimous. All of you have to agree on each charge that is being made or there will be no verdict."); id. 165:23–166:4 ("As I mentioned before, the decision you reach on each count must be unanimous. You must all agree to the verdict. To find each defendant guilty of each offense, every one of you must agree that the Government has overcome the presumption of innocence with evidence that proves each element of that offense beyond a reasonable doubt. To find each defendant not guilty, every one of you must agree that the Government has failed to convince you beyond a reasonable doubt."); see also id. 146:19–149:7. The case against Johnson involved a routine allegations of lying in one interview, unlike the complex, multi-act allegations in in Beros. 833 F.2d at 455. The Court's denial of Johnson's request for a specific unanimity instruction for Count V does not seriously risk a miscarriage of justice. Johnson, 302 F.3d at 150.

Nor was a special jury verdict form required. Count V alleged that Johnson made a single false statement with two clauses: "he did not recognize the deeds and had no involvement with the Loney Street Property." ECF 1 at p. 20; see 9/20/24 Day 5 Tr. Trans. 14:16–17:3. Separating these clauses on the verdict form was unnecessary. The Court's denial of the demand for a special verdict form presents no "serious danger" of "a miscarriage of justice." Johnson, 302 F.3d at 150.

12

## IV. KANE'S POST-TRIAL MOTIONS

Kane filed post-trial motions under Federal Rules of Criminal Procedure 29 and 33. For the reasons stated below, Kane's motions are **DENIED**.

### A. Rule 29 Motion

#### 1. Parties' Contentions

Kane challenges the sufficiency of the evidence regarding Count 3. ECF 154 at 4–5. According to Kane, his statement to the FBI agents on June 23, 2020—that the two pieces of paper presented as two separate documents with distinct differences, were a single document that did not scan properly—is insufficient to establish a violation of 18 U.S.C. § 1001 because (1) the Government did not prove that Kane made the statement knowingly and willfully and (2) that this statement was immaterial because the FBI agents were "clearly" not going to rely on it. ECF 154 at 7–9. The Government responds that (1) Kane's argument that his statement was accidental is a factual argument properly raised in closing arguments and (2) the statements were material because they could have caused FBI agents to re-direct their investigation. ECF 159 at 6, 16.

#### 2. Analysis

The requirements under Title 18, United States Code, Section 1001(a) and the Third Circuit's interpretation of "willfully" in that statute are discussed above. Considering the evidence in the light most favorable to the government, Gatlin, 613 F.3d at 380, this Court cannot conclude that "no reasonable juror could accept the evidence as sufficient to support [Kane]'s guilt beyond a reasonable doubt." Fattah, 914 F.3d at 183. The jury was presented with substantial evidence that could convince a reasonable juror that Kane made a knowing and willful false statement to the FBI agents when he stated that the two pieces of paper presented as two different documents, were actually a single document. See Fattah, 914 F.3d at 183.

Barger's testimony—which is ignored in Kane's motion—must be accepted as true "when viewed in the light most favorable to the government" for the purposes of this motion, and provides evidence which a rational jury could accept as sufficient to support Kane's guilt beyond a reasonable doubt. United States v. Rinaldi, 2023 WL 3034327, at *1 (3d Cir. Apr. 21, 2023), cert. denied, 144 S. Ct. 314, 217 L. Ed. 2d 146 (2023). Barger's testimony provides sufficient evidence based on which a reasonable jury could find, beyond a reasonable doubt, that Kane acted willfully and knowingly.

The Government presented evidence including that Kane had fabricated both versions of the purported invoice and intentionally and fraudulently inflated the value of Frankford Plating's claim for the work done at the Loney Street Property. The Government presented the original mechanic's lien that Kane filed on behalf of Frankford Plating on December 29, 2017, Gov't Ex. 71, and the amended mechanic's lien that Kane filed on behalf of Frankford Plating on February 13, 2018, Gov't Ex. 75. See 9/18/24 Day 3 Tr. Trans. 220:16–19, ECF 151. Both the original mechanic's lien and the amended mechanic's lien attached invoices from Frankford Plating for $133,900 for work done at the Loney Street Property, but the invoices had slight differences (one document included a description of the work provided but the other did not). Gov't Exs. 71 at 9 & 75 at 9; see ECF 159 at 6–7. Barger testified that he—the sole owner of Frankford Plating—did not create the invoice, id. 222:14–223:10, or know that Kane had filed the mechanic's lien. 9/18/24 Day 3 Tr. Trans. 224:3–13, ECF 151.[4] Then, the Government presented testimony from FBI Agent Bryan Baker, who testified that he showed Kane the two invoices attached to the original and amended mechanic's liens. 9/19/24 Day 4 Tr. Trans. 165:4–19, ECF 144; see Gov't

---

[4] Kane asserted claims by one client, Frankford Plating, against another client, Ruggiero, and did so without telling his third client, Barger. Barger did not know that he had sued his father-in-law, Ruggiero, until right before this trial. 9/18/24 Day 3 Tr. Trans. 224:3–13, ECF 151.

14

Exs. 71 at 9 & 75 at 9.  Agent Baker testified that he asked Kane why "one [invoice] did not have the description of work provided," and that Kane "stated that these [invoices] were" the same, had been "unedited," and showed a discrepancy due to a "failure to scan properly."  9/19/24 Day 4 Tr. Trans. 165:14–19, ECF 144.

Kane argues that that certain isolated evidence—that the FBI Agents served him a target letter after questioning him—demonstrates that there was insufficient evidence for a reasonable juror to convict Kane on Count 3 beyond a reasonable doubt.  But this does not necessarily mean that "no reasonable juror could accept" the evidence as a whole as sufficient to support the defendant's guilt.  See United States v. Coleman, 811 F.2d 804, 807 (3d Cir. 1987) (holding that the court must determine "whether all the pieces of evidence against the defendant, taken together, make a strong enough case to let the jury find him guilty beyond a reasonable doubt").

Another serious defect in the Kane brief is that it completely ignores the testimony of co-defendant Barger, who pled guilty and entered into a cooperation agreement with the Government.  The Government also presented testimony from Barger that in 2019, Kane directed him to prepare backdated and fake purchase orders for work purportedly done by Frankford Plating on the Loney Street Property.  Id. at 238:9–241:21, ECF 151; see ECF 159 at 13.  Barger's testimony, which was obviously accepted by the jury and is considered in the light most favorable to the Government, supported the sufficiency of the evidence that the jury relied on to find Kane guilty.

The evidence as a whole, viewed in the light most favorable to the government and in the context of the totality of the evidence in the record, "supports a reasonable inference that" Kane "was aware that" in a general sense, that lying to the FBI or obstructing a criminal investigation was unlawful, particularly in light of his status as an attorney.  Starnes, 583 F.3d at 213; see Iglesias, 535 F.3d at 156 ("The government may defeat a sufficiency-of-the-evidence challenge on

circumstantial evidence alone." (citing Bobb, 471 F.3d at 494). Based on this evidence, a rational jury could have concluded beyond a reasonable doubt that Kane made these statements to the FBI knowingly and willfully.

The Court rejects Kane's arguments that his allegedly false statements to the FBI were "not material." The cases cited by the Defendant are fully refuted in the Government's brief.

### B. Rule 33 Motion

#### 1. Parties' Contentions

Kane moves for a new trial under Federal Rule of Criminal Procedure 33 and contends a new trial is warranted because (1) his statement may have been mistaken and thus was not knowing or willful and (2) the Government was unlikely to be influenced by the statement since it already were serving the target letter. ECF 154 at 13–15. The Government responds that Kane has failed to show his conviction on Count 3 was contrary to the weight of the evidence. ECF 159 at 18.

#### 2. Analysis

Kane's Rule 33 motion merely repeats the arguments from his Rule 29 motion. The Court rejects Kane's claim of insufficient evidence and improper investigative conduct by the FBI agents questioning Kane when they had already prepared and were about to serve a target letter on Kane, but did not tell him this. Considering Kane's statements to the agents alongside all the Government's evidence, viewed in the light most favorable to the Government, the evidence not only supports the sufficiency of the conviction but also compels the conclusion that Kane is not entitled to a new trial.

### V. CONCLUSION

For these reasons, both Defendants' post-trial motions are **DENIED**. An appropriate order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\Criminal Cases\24-cr-14 Kane et al\24-cr-14 Memo on Post-Trial Motions.docx